**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr>
<td>

AVENTISUB LLC, *et al.*,

             Plaintiffs,

    v.

ENG SALES LLC,

           Defendants.

</td>
<td>

Civil Action No. 24-04748 (GC) (JTQ)

**OPINION**

</td>
</tr>
</table>

**CASTNER, District Judge**

      **THIS MATTER** comes before the Court upon Defendant Eng Sales LLC's Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure (Rules) 12(b)(1) and 12(b)(6). (ECF No. 9.) Plaintiffs Aventisub LLC, Chattem, Inc., and Sanofi-Aventis U.S. LLC (collectively, Sanofi) opposed (ECF No. 14), and Defendant replied (ECF No. 15). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, the Motion to Dismiss is **DENIED**.

## I. BACKGROUND[1]

      Plaintiffs are limited liability companies operating out of Bridgewater, New Jersey. (ECF No. 1 ¶¶ 8-10.) "Sanofi is recognized throughout New Jersey, the United States, and the world as a leading manufacturer of over-the-counter consumer health products," such as the allergy

---

[1]     On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

medication known as "Allegra."  (*Id.* ¶¶ 22, 39.)  Plaintiffs "advertise[], distribute[], and sell[] [their] Allegra Products to consumers" under several registration marks (the Allegra Marks) issued by the U.S. Patent and Trademark Office (USPTO).  (*Id.* ¶¶ 13, 15.)  Plaintiffs have "established substantial goodwill and widespread recognition in the Allegra Marks, and the marks have become famous and associated exclusively with Sanofi and its products by both customers and potential customers, as well as the general public at large."  (*Id.* ¶ 18.)  Widespread recognition has been established through extensive promotion and advertisements, as well as Plaintiff's commitment to rigorous testing and quality control measures implemented to protect consumers.  (*Id.* ¶¶ 18-26.)

Defendant Eng Sales LLC is unaffiliated with Plaintiffs and sells products, including products bearing the Allegra Marks, "on several online retail platforms, including, but not limited to, Amazon.com, using the seller name 'Stam Sales.'" (*Id.* ¶¶ 11, 27.)  Plaintiffs have "never authorized or otherwise granted Defendant permission to sell Allegra Products."  (*Id.* ¶ 28.) According to Plaintiffs, "Defendant represents that the Allegra Products Defendant offers for sale on Amazon.com are 'new' despite the fact that they are expired, used, closed-out, liquidated, and/or non-genuine product of unknown origin."  (*Id.* ¶ 29.)  Additionally, Plaintiffs assert that Defendant falsely assures customers that they are purchasing safe Allegra products, and that Defendant knowingly removes and/or hides expiration dates.  (*Id.* ¶¶ 30-31.)

After learning about Defendant selling "expired, used, closed-out, liquidated, and/or non-genuine product of unknown origin," Plaintiffs "purchased Allegra Products from the Defendant's Amazon.com storefront Stam Sales."  (*Id.* ¶ 33.)  According to Plaintiffs, not only did Defendant fail to deliver the full purchase order, but the Allegra products purchased were either expired or expiring in one to three months.  (*Id.* ¶¶ 34-35.)  Plaintiffs also allege that customers have complained about Defendant's sale of the "used and expired product."  (*Id.* ¶ 40.)  These

complaints indicate that the products ordered from Defendant were damaged beyond what may ordinarily occur in transit, product packaging was unsealed, product packaging was unmarked, and expiration dates were missing.  (*Id.*)  Customer complaints also indicate that the delivery of these products took a month and that the products could not be returned.  (*Id.*)  Consequently, Plaintiff asserts that Defendant is creating health and safety risks by selling inferior Allegra products and harming Plaintiffs' "brand, image, business, and goodwill with the public."  (*Id.* ¶¶ 36-37.)  Thus, "Defendant's conduct results in consumer confusion, the dilution of [Plaintiffs'] goodwill and trade name, as well as lost sales and profits."  (*Id.* ¶ 38.)

Plaintiffs bring a single Count for injunctive relief and money damages against Defendant for "trademark infringement, false advertising, and unfair competition" in violation of the Lanham Act, 15 U.S.C. § 1125.[2]  (*Id.* ¶ 46-56.)  Pending before the Court is Defendant's Motion to Dismiss for lack standing and failure to state a claim.  (ECF Nos. 9-1 & 15.)

## II.   LEGAL STANDARD

### A.  Rule 12(b)(1)—Lack of Subject-Matter Jurisdiction

Under Rule 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim.  *See* Fed. R. Civ. P. 12(b)(1).  A motion to dismiss for want of standing is properly brought under Rule 12(b)(1), because "standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).  On a motion to dismiss for lack of standing, plaintiff "bears the burden of establishing the elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."

---

[2]      The Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b).

*Id.* (citations and internal quotation marks omitted); *see also Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2207-08 (2021) (confirming that "plaintiffs must demonstrate standing for each claim that they press and for each form of relief they seek . . . with the manner and degree of evidence required at the successive stages of the litigation").

In evaluating a Rule 12(b)(1) motion to dismiss, courts must first determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted).

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Id.*; *see Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (noting that a motion "supported by a sworn statement of facts . . . must be construed as a factual, rather than a facial attack" (quoting *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982))). The party invoking the federal court's jurisdiction has "the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case" and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* (quoting *Mortensen*, 549 F.2d at 891). "Therefore, a 12(b)(1) factual challenge strips the plaintiff

of the protections and factual deference provided under 12(b)(6) review." *Hartig Drug Co.*, 836 F.3d at 268.

Regardless of the type of challenge, the plaintiff bears the "burden of proving that the court has subject matter jurisdiction." *Cottrell v. Heritages Dairy Stores, Inc.*, Civ. No. 09-1743, 2010 WL 3908567, at *2 (D.N.J. Sep. 30, 2010) (citing *Mortensen*, 549 F.2d at 891).

### B.  Rule 12(b)(6)—Failure to State a Claim

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting *Watters v. Bd. of Sch. Dir. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)).  "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)).  When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)).  The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis*, 824 F.3d at 349).

### III.    <u>DISCUSSION</u>

#### A.  Article III Standing

Defendant first argues that Plaintiffs lack standing because the Complaint fails to "explain the inter-relation between any of the three Plaintiffs, or their connection, if any, to the trademarks listed in . . . the Complaint." (*See* ECF No. 9-1 at 18-19; ECF No. 15 at 7-10.[3]) Defendant further alleges that "[w]ithout any factual allegations concerning injury, causation[,] and redress, Plaintiffs have not established standing to bring this suit."  (ECF No. 15 at 8.)

To satisfy the mandates of Article III standing, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Lexmark Int'l., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (quoting *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560 (1992)).  "During the pleading stage, 'general factual allegations' showing these elements suffice."  *In re Revlimid & Thalomid Purchaser Antitrust Litig.*, Civ. No. 19-7532, 2024 WL 2861865, at \*26 (D.N.J. June 6, 2024) (quoting *Lujan*, 504 U.S. at 561).  Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of establishing Article III standing.  *Lujan*, 504 U.S. at 561.

The United States Court of Appeals for the Third Circuit has recognized that an injury "is concrete if it is real, or distinct and palpable, as opposed to merely abstract, and is sufficiently particularized if it affect[s] the plaintiff in a personal and individual way."  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (internal quotations omitted).  A harm "is 'actual or imminent' rather than 'conjectural or hypothetical' where it is presently or actually occurring, or

---

[3]    Page numbers for record cites (i.e., "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

is sufficiently imminent." *Id.* at 278. Further, "[i]n the context of a motion to dismiss, . . . the "[i]njury-in-fact element is not Mount Everest. The contours of the injury-in-fact requirement, while not precisely defined, are very generous, requiring only that claimant allege . . . some specific, identifiable trifle of injury." *Id.*

Regarding "traceability," "[t]he plaintiff must establish that the defendant's challenged actions, and not the actions of some third party, caused the plaintiff's injury." *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 142 (3d Cir. 2009). The "causal connection need not be as close as the proximate causation needed to succeed on the merits of a tort claim," but rather "an indirect causal relationship will suffice, so long as there is a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant." *Id.* (internal citations and quotations omitted). As to redressability, "[i]t is sufficient for the plaintiff to establish a 'substantial likelihood that the requested relief will remedy the alleged injury in fact.'" *Id.* at 143 (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

Here, Plaintiffs have sufficiently pled facts to establish Article III standing. Specifically, Plaintiffs assert that: (1) they manufacture and sell Allegra products, use the Allegra marks on these products, and have legal rights to the Allegra Marks; (2) Defendant is an entity unaffiliated with Plaintiffs; (3) Defendant has never received permission to sell Allegra products; (4) Defendant is advertising and offering for sale "new" Allegra products bearing Allegra Marks; (5) the products Defendant sells "are expired, used, closed-out, liquidated, and/or non-genuine product of unknown origin"; (6) customers have reported complaints because of the faulty products; and (7) "Defendant's conduct results in consumer confusion, the dilution of [Plaintiffs'] goodwill and trade name, as well as lost sales and profits." (*See generally* ECF No. 1.) Plaintiffs have sufficiently alleged an injury-in-fact that is fairly traceable to the Defendant's actions and that will

likely be redressed by a favorable judicial decision.[4]  *Lexmark*, 572 U.S. at 125; *see also Emerson Radio Corp. v. Emerson Quiet Kool Co. Ltd.*, Civ. No. 17-5358, 2018 WL 1169132, at *3 n.7 (D.N.J. Mar. 6, 2018) (finding that the plaintiff had Article III standing to bring Lanham Act claims because the plaintiff alleged that it owned the marks at issue, and the defendant's use of the marks caused consumer confusion and harm to the plaintiff's reputation and goodwill); *Aspen Roofing, Inc. v. Aspen Contracting, Inc.*, 2019 WL 1317623, at *4 (D. Colo. Mar. 21, 2019) (finding that the plaintiff had standing to bring Lanham Act claims because the plaintiff had a legally protected interest in the trademark, and the defendant's use of the trademark caused consumer confusion and harm to the plaintiff's name and goodwill); *Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp. 3d 603, 609-11 (E.D. Pa. 2018) (finding that the plaintiff had standing to bring Lanham Act claims because the defendants' marketing and sale of their deceptively marketed product was damaging the reputation and goodwill of the plaintiff, and the defendants' actions hindered the plaintiff's sales).

---

[4]    Accepting the factual allegations in the Complaint as true and drawing all reasonable inferences in favor of Plaintiffs, the Court finds that Defendant's argument regarding Plaintiffs' failure to explain the relationship between each entity lacks merit.  (*See* ECF No. 9-1 at 18-19; ECF No. 15 at 7-10.)  First, the Complaint refers to Plaintiffs collectively as "Sanofi" and indicates that they maintain a principal place of business at the same address in Bridgewater, New Jersey. (*See* ECF No. 1 ¶¶ 8-10.)  This is sufficient for the Court to infer that Plaintiffs are affiliated entities, particularly when accepting all facts as alleged in the Complaint as true.  Second, the Complaint sufficiently alleges that the supposed harms, *i.e.*, reputational harm and lost sales, apply to each Plaintiff.  Therefore, the Court is satisfied that each Plaintiff has satisfied Article III standing at the pleading stage.  *See also Brown v. Showboat Atl. City Propco, LLC*, Civ. No. 08-5145, 2009 WL 690625, at *2 (D.N.J. Mar. 11, 2009) ("[T]he level of specificity necessary to avoid dismissal for lack of standing should not be 'exaggerated.'  At the pleading stage, the Court may presume that the general allegations in plaintiff's complaint as to standing encompass a specific fact necessary to support the allegations." (quoting *Cottrell v. Goods Wheels, et al.*, Civ. No. 08-1738, 2008 WL 4792546, at *3 (D.N.J. Oct. 31, 2008))).

**B.  Statutory Standing – Right to Sue Under the Lanham Act**

Next, Defendant argues that Plaintiffs cannot establish statutory standing to bring claims under the Lanham Act.  (*See* ECF No. 9-1 at 12-14; ECF No. 15 at 7-10.)

Whether a plaintiff has statutory standing to bring suit under the Lanham Act is a separate inquiry from whether a plaintiff has Article III standing.[5]  *See Lexmark*, 572 U.S. at 125 (acknowledging the plaintiff had Article III standing and then analyzing statutory standing as to a false advertising claim under the Lanham Act); *see also Lundberg v. One Three Five, Inc.*, 2022 WL 2669136, at *4-5 (W.D. Pa. Jan. 14, 2022) (analyzing both Article III and statutory standing); *Moreland v. Beso Lounge & Restaurant LLC*, 2020 WL 5302312, at *4 (D. Conn. Sep. 4, 2020) ("[P]laintiffs asserting false advertising claims must also have standing under Article III and the Lanham Act.").  As the United States Supreme Court has recognized, "[T]he Lanham Act was intended to make 'actionable the deceptive and misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition.'"  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (quoting 15 U.S.C. § 1127).  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), "creates a federal remedy 'that goes beyond trademark protection.'"  *POM Wonderful LLC, v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014) (quoting *Dastar Corp.*, 539 U.S. at 29).  That provision "creates a cause of action for unfair competition through misleading advertising or labeling."  *Id.*

"On its face, [the Lanham Act] gives standing to sue to 'any person who believes that he is or is likely to be damaged.'"  *Smith v. Montoro*, 648 F.2d 602, 607 (9th Cir. 1981) (quoting 15

---

[5]    Statutory standing is not a jurisdictional question, but rather a question as to whether an entity has a right to sue under the Lanham Act, 15 U.S.C. § 1125.  *See Lexmark*, 572 U.S. at 128 n.4; *see also Frompovicz*, 313 F. Supp. 3d at 611-12 (noting that "[w]hether Plaintiff has a right to sue under the Lanham Act is an entirely different question" than Article III standing).

U.S.C. § 1125).  A plaintiff may assert claims under the Lanham Act if the plaintiff "fall[s] within the zone of interests protected by the law invoked" and the plaintiff suffers "injuries . . . proximately caused by violations of the statute." *Lexmark*, 572 U.S. at 129-34; *see Shawarma Stackz LLC v. Jwad*, 2021 WL 5827066, at *13 (S.D. Cal. Dec. 8, 2021) (applying the statutory standing test outlined in *Lexmark* to trademark infringement claim); *Frompovicz v. Niagara Bottling, LLC*, 313 F. Supp. 3d 603, 611-12 (E.D. Pa. 2018) (applying the statutory standing test outlined in *Lexmark* to false advertising claim).

"The zone-of-interests test is . . . an appropriate tool for determining who may invoke [a] cause of action [pursuant to] § 1125(a)." *Lexmark*, 572 U.S. at 130.  To come within the zone of interest, a Plaintiff must state an injury to a "commercial interest in reputation or sales." *Id.* at 131-32; *Hotaling & Co.*, *LLC v. LY Berditchev*, Civ. No. 20-16366, 2021 WL 3783260, at * 4 (D.N.J. Aug. 26, 2021); *Aspen Roofing*, 2019 WL 1317623, at *4.  As to proximate causation, "[t]he question it presents is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." *Lexmark*, 572 U.S. at 133.

Plaintiffs have statutory standing to pursue their claims brought under § 1125(a) of the Lanham Act.  First, Plaintiffs satisfy the zone-of-interest test because they have asserted facts regarding an injury to their reputation and sales based on the various consumer complaints outlined in Plaintiffs' Complaint.  (*See* EC No. 1 ¶ 40).  Second, Plaintiffs meet the proximate causation requirement because they have sufficiently alleged that Defendant's conduct of selling defective products, which display Allegra Marks, "results in consumer confusion, the dilution of [Plaintiffs'] goodwill and trade name, [and] lost sales and profits." (*Id.* ¶ 38.)  Plaintiffs have also sufficiently asserted that Defendant's conduct misrepresents the nature, characteristics, and qualities of their goods and services.  (*Id.* ¶ 49.)  Because these allegations fall squarely within the Lanham Act, *see*

10

§ 1125(a), Plaintiffs have sufficiently alleged that their injuries were proximately caused by Defendant.  Therefore, Plaintiffs have statutory standing to sue under the Lanham Act.

### C.  Sufficiency of Plaintiffs' Claims

Defendant also argues that Plaintiffs have not sufficiently alleged claims for trademark infringement, false advertising, and unfair competition.  As a threshold matter, Defendant argues that Plaintiffs' Complaint must be dismissed because the three causes of action cannot be "lumped together" into a single count.  (*See* ECF No. 15 at 10-18.)  Defendant relies on *Ziemba v. Incipio Tech., Inc.* in support.  Civ. No. 13-5590, 2014 WL 4637006, at *4 (D.N.J. Sep. 16, 2014).  In *Ziemba*, the district court found that the first count in the complaint contained "much more than [a] single claim of patent infringement" and rather "contained separate claims of infringement (direct, contributory and induced), each containing its own elements, each presumably premised on separate theories, and as against two separate corporate Defendants."  *Id.*  The court further found that "grouping all of the[] claims into a single [c]ount violate[d] the pleading standard[s] and fail[ed] to provide each [d]efendant with adequate notice of the particular claim[s] being asserted against them and the specific grounds upon which such claim[s] rest[ed]."  *Id.*

*Ziemba*, however, is distinguishable from the present case because Plaintiffs bring suit against a single Defendant only.  Thus, Defendant is on notice that all of the Complaint's allegations and claims pertain to it.  Further, unlike in *Ziemba*, the Court is satisfied here that the Complaint has sufficiently alleged the specific grounds upon which each claim rests.  Indeed, two of the three claims in the Complaint—trademark infringement and unfair competition—require proof of the same facts.  *Spectrum Brands, Inc. v. Arrow Merch. LLC*, Civ. No. 22-992, 2023 WL 6542699, at *3 (D.N.J. Feb. 8, 2023); *see also Steeplechase Arts & Prod., LLC v. Wisdom Paths, Inc.*, 652 F. Supp. 3d 481, 490-92 (D.N.J. 2023) (noting that count two of the complaint asserted

an "unfair competition claim under the Lanham Act, alleging both false advertising and false designation of origin," and addressing each claim in turn).  Because the grouping of Plaintiffs' claims into a single count is not a sufficient basis for dismissal in this case, the Court will address the sufficiency of each claim in turn.

### 1. Trademark Infringement/Unfair Competition

It is well established that the pleading standards for trademark infringement and unfair competition are the same.  *Spectrum Brands, Inc.*, 2023 WL 6542699, at *3; *Emerson Radio Corp.*, 2018 WL 1169132, at *3 (same).  To succeed on a trademark infringement or unfair competition claim under the Lanham Act, Plaintiffs must prove that: "(1) the mark [it seeks to protect] is valid and legally protectable, (2) [the plaintiff] owns the mark, and (3) the defendant's use of the mark is likely to create confusion concerning the origin of goods or services associated with the mark." *Emerson Radio Corp.*, 2018 WL 1169132, at *3 (quoting *Health & Body Store, LLC v. Justbrand Ltd.*, 480 F. App'x 136, 145 n.15 (3d Cir. 2012)).  "A likelihood of confusion exists when 'consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark.'" *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 211 (3d Cir. 2000) (quoting *Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 862 (3d Cir. 1992)).

Here, Plaintiffs have sufficiently pled facts to support a claim for trademark infringement and unfair competition.  First, the Complaint alleges that the USPTO has issued several registrations for Allegra Marks and that "[t]he Allegra Marks have been in continuous use since at least their respective dates of registration."  (ECF No. 1 ¶¶ 13-14.)  Thus, accepting the allegations in the Complaint as true and drawing all reasonable inferences in favor of Plaintiffs, the Allegra Marks are presumed valid and legally protectable.  *See Emerson Radio Corp.*, 2018 WL 1169132,

at *3 (finding the mark at issue valid and legally protectable because it was registered and in continuous use).

Second, as to ownership, the Complaint alleges that "Sanofi advertises, distributes, and sells its Allegra Products to consumers under the Allegra Marks," "Sanofi has . . . acquired common law rights in the use of the Allegra Marks through the United States," Sanofi has invested "a substantial amount of money and has expended significant time and effort in advertising, promoting, and developing the Allegra Marks through the United States and the world," and the Allegra Marks "have become famous and associated exclusively with Sanofi and its products by . . . consumers[,] potential consumers[, and] . . . the public at large." (ECF No. 1 ¶¶ 15-18.) The Complaint also provides a list of Allegra Marks. (*Id.* ¶ 13.) Accepting the allegations in the Complaint as true and drawing all reasonable inferences in favor of Plaintiffs, the Court finds that the Complaint asserts enough facts to infer that Plaintiffs own the Allegra Marks.

Third, the Complaint alleges that Defendant has been selling Allegra products bearing Allegra Marks without Plaintiffs' permission. (*Id.* ¶¶ 28-29.) The Complaint also alleges that Defendant has been offering for sale "new" Allegra products even though said products are "expired, used, closed-out, liquidated, and/or non-genuine product of unknown origin." (*Id.*) Defendant's conduct has been creating "consumer confusion, the dilution of [Plaintiffs'] goodwill and trade name, as well as lost sales and profits." (*Id.* ¶¶ 29, 38, 41.) In support of these contentions, the Complaint includes several consumer complaints that indicate the products ordered from Defendant were damaged, product packaging was unsealed, and expiration dates were missing. (*Id.* ¶ 40.) Additionally, Plaintiffs ordered products from Defendant and not only failed to receive the full order, but also received either expired or soon to be expired product. (*Id.* ¶¶ 34-35.) Accepting the factual allegations in the complaint as true and drawing all reasonable

inferences in favor of Plaintiffs, the Court finds that Plaintiffs have sufficiently alleged that Defendant's use of the Allegra Marks is likely to create confusion concerning the origin of goods or services associated with the Marks. *See also Spectrum Brands, Inc.*, 2023 WL 6542699, at *5 (finding that the plaintiff stated a facially plausible trademark infringement claim because the plaintiff asserted "facts alleging that Defendant infringed upon its trademark where it sold products bearing the [p]laintiff's [m]ark into the stream of commerce in a materially different state than that in which Plaintiff's Products are typically sold").

Defendant argues that Plaintiffs' claims must be dismissed because "the mere resale of trademarked goods—like here—does not constitute trademark infringement, even if made without the trademark owner's consent." (ECF No. 9-1 at 13.) Defendant appears to be asserting a defense under the "first sale" doctrine. Under the "first sale" doctrine, "the critical question is whether a product resold by an alleged infringer is 'genuine.' If so, no infringement has occurred." *Steeplechase*, 652 F. Supp. 3d at 494 (citation omitted).

The "first sale" doctrine "is an affirmative defense to trademark infringement claims." *Id.* at 493; *see also Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 301 n.4 (3d Cir. 1998). "The facts necessary to establish an affirmative defense must generally come from matters outside of the complaint. Thus, with some exceptions, affirmative defenses should be raised in responsive pleadings, not in pre-answer motions brought under Rule 12(b)." *Maya Swimwear, Corp. v. Maya Swimwear, LLC*, 789 F. Supp. 2d 506, 512, 517-18 (D. Del. 2011) (quoting *Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 (3d Cir. 2003)) (denying the defendants' motion to dismiss that was "based on their defense of the first sale doctrine").

14

Here, Plaintiffs allege that Defendant is selling "expired, used, closed-out, liquidated, and/or non-genuine product of unknown origin." (ECF No. 1 ¶ 29.) Because the Court must accept Plaintiffs' allegations as true on a motion to dismiss, Defendant's "first sale" argument presents factual questions that are premature to resolve at this stage. *See Maya*, 789 F. Supp. 2d at 512, 514. Moreover, this affirmative defense should not be raised in this pre-answer Motion to Dismiss. *Id.* Therefore, Defendant's Motion is denied as to Plaintiffs' trademark infringement and unfair competition claims.

### 2. *False Advertising*

"To establish a false advertising claim under the Lanham Act, a plaintiff must prove: 1) that the defendant has made false or misleading statements as to his own product [or another's]; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc." *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 248 (3d Cir. 2011) (citing *Warner–Lambert v. Breathasure*, 204 F.3d 87, 91-92 (3d Cir. 2000)). Defendant argues that Plaintiffs fail to meet any of the requisite elements for false advertisement.

The Court disagrees. Plaintiffs have sufficiently pled facts demonstrating that Defendant made false or misleading statements about the Allegra products and that consumers have been and are likely to be deceived by those statements. Plaintiffs assert that they have "never authorized or otherwise granted Defendant permission to sell Allegra Products." (ECF No. 1 ¶ 28.) For example, Plaintiffs allege that "Defendant represents that the Allegra Products Defendant offers for sale on Amazon.com are 'new' despite the fact that they are expired, used, closed-out, liquidated, and/or

non-genuine product of unknown origin." (*Id.* ¶ 29.) Further, Defendant falsely assures customers that they are purchasing safe Allegra products, and that Defendant knowingly removes and/or hides expiration dates. (*Id.* ¶¶ 30-31.) Plaintiffs also outline customer complaints regarding packaging and expiration date issues. (*Id.* ¶ 40.) Finally, Plaintiffs allege that "Defendant's conduct results in consumer confusion, the dilution of [Plaintiffs'] goodwill and trade name, as well as lost sales and profits." (*Id.* ¶¶ 38.) These allegations are sufficient at the pleading stage. *See also Swarovski Optik N.A. Limited v. iBuy Group LLC*, Civ. No. 23-01210, 2024 WL 1142296, at *2-3 (D.N.J. Mar. 15, 2024) (denying a motion to dismiss a false advertising claim where the plaintiff accused the defendant of falsely advertising the products at issue as "new"); *Steeplechase*, 652 F. Supp. 3d at 491 (declining to determine whether advertising the product as "new" on Amazon.com could unavoidably mislead consumers because such a question was premature without discovery). Therefore, Defendant's Motion is denied as to Plaintiffs' false advertising claim.

## IV.    **CONCLUSION**

For the reasons stated above, and for other good cause shown, Defendant's Motion to Dismiss (ECF No. 9) is **DENIED**. An appropriate Order follows.

Dated: November 18, 2024

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE